IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ALAN SCOTT HOBBS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 115-121 |
| | ) | (Formerly CR 112-259) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

After a careful, *de novo* review of the file, the Court concurs with the Magistrate Judge's Report and Recommendation ("R&R"), to which objections have been filed (doc. no. 34). Petitioner's objections consist primarily of a restatement of arguments already addressed by the Magistrate Judge in his consideration of the original motion filed pursuant to 28 U.S.C. § 2255. Nothing in Petitioner's objections undermines the Magistrate Judge's reasoned analysis in the R&R, (doc. no. 15), explaining why Petitioner's § 2255 motion is due to be denied. Thus, the Court **OVERRULES** all of the objections and **ADOPTS** the R&R of the Magistrate Judge as its opinion.

However, upon receiving the Magistrate Judge's R&R, Petitioner embarked on a campaign to, in effect, restart these collateral proceedings by using additional time that had been granted for the purpose of filing *objections* to the R&R, (doc. nos. 19, 31), to instead file nine *motions*. (See doc. nos. 20, 22, 24-28, 32-33.) This deluge of filings includes eight

motions requesting permission to file new claims, in addition to the nine claims raised in the original § 2255 motion signed on August 4, 2015. These belated claims include:

(1) The Court abused its discretion in refusing to consider whether to permit Petitioner to act as co-counsel, (doc. no. 20);

(2) The prosecution committed misconduct when it presented false testimony from Parole Officer Jerry Davignon concerning the dates he supervised Petitioner, (doc. no. 24);

(3) Petitioner received ineffective assistance of appellate counsel because the issue of prosecutorial misconduct concerning the Davignon testimony was not raised in the direct appeal, (doc. no. 25);

(4) Petitioner received ineffective assistance of appellate counsel because counsel did not state the "specific substantial prejudice" Petitioner suffered when arguing abuse of court discretion concerning the denial of the third motion for trial continuance, (doc. no. 26);

(5) Ms. Jennings provided ineffective assistance of counsel by not objecting to the false Davignon testimony, (doc. no. 27);

(6) Ms. Jennings provided ineffective assistance of counsel "for not asking for an evidentiary hearing or whatever it would have taken to help the Court determine if Petitioner's trial should have been postponed until after Petitioner's appeal" for terroristic threats is resolved, (doc. no. 28; doc. no. 32-1);

(7) The Court abused its discretion by denying a motion for continuance based on the false assertion by Ms. Jennings that she was "totally prepared" to go to trial, (doc. no. 32-2);

(8) The Court abused its discretion in refusing to permit Ms. Jennings to withdraw after "we had established a complete breakdown in communication and an irreconcilable conflict" based on Ms. Jennings' inadequate pre-trial investigation of Ms. Jefferies' schizophrenia, (doc. no. 32-3); and

(9) Ms. Jennings provided ineffective assistance of counsel because she refused to follow Petitioner's preferred trial strategy regarding the presentation of evidence concerning Ms. Jefferies' schizophrenia, (doc. no. 33).

The Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus "to the extent that the practice in those proceedings: (A) is not specified in a federal statute, the Rules Governing 2254 Cases, or the Rules Governing Section 2255 Cases; and (B) has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(4). Similarly, Rule 12 of the Rules Governing § 2255 Proceedings provides: "The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." Furthermore, both the Supreme Court and the Eleventh Circuit have held Federal Rule of Civil Procedure 15 applicable to requests to amend § 2255 motions. See Mayle v. Felix, 545 U.S. 644, 654-55 (2005); Pruitt v. United States, 274 F.3d 1315, 1317-19 (11th Cir. 2001). Thus, the Court will apply a traditional Rule 15 analysis to Petitioner's motion to amend.

Under Rule 15(a)(1)(A), a party may amend its pleading once as a matter of course within twenty-one days after service. Petitioner's motions to amend - filed nearly one year after the initial § 2255 motion, nearly one month after the Magistrate Judge entered his R&R, and nearly one week after the standard fourteen-day deadline to file objections to the R&R – do not fall under the rubric of Rule 15(a)(1)(A). Thus, he can only amend with leave of court: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The government does not consent, (doc. no. 36, p. 5 & n.4), and thus the Court turns to its determination on whether Petitioner's belated amendments should be allowed.

As a general rule, leave to amend under Fed. R. Civ. P. 15(a) is given freely. Foman v. Davis, 371 U.S. 178, 182 (1962); Wedemeyer v. Pneudraulics, Inc., 510 F. App'x 875, 878

(11th Cir. 2013). That said, leave to amend is not guaranteed, and a trial court may deny such leave "in the exercise of its inherent power to manage the conduct of litigation before it." Reese v. Herbert, 527 F.3d 1253, 1263 (11th Cir. 2008). "In making this determination, a court should consider whether there has been undue delay in filing, bad faith or dilatory motives, prejudice to the opposing parties, and the futility of the amendment." Saewitz v. Lexington Ins. Co., 133 F. App'x 695, 699 (11th Cir. 2005) (quoting Foman, 371 U.S. at 182).

As one court has explained in the context of affirming the denial of a request to amend in a § 2255 case, a petitioner who "has had ample opportunity to present his case to the Court . . . cannot simply raise new claims as they occur to him." United States v. Burbage, 280 F. App'x 777, 782 (10th Cir. 2008); cf. McCleskey v. Zant, 499 U.S. 467, 485 (1991) ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless, piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." (citation omitted)). This is particularly true where a party has been put on notice that his claims are meritless and then attempts to introduce new theories of obtaining relief. See Andrx Pharms., Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1236-37 (11th Cir. 2005). Moreover, a motion to amend that seeks to add claims is properly denied as futile when the claims are without merit or cannot form the basis for cognizable relief. See Coventry First, LLC v. McCarty, 605 F.3d 865, 870 (11th Cir. 2010) (ruling that futility includes proposed amendments that fail as a matter of law).

As set forth in the R&R, Petitioner originally alleged trial counsel provided ineffective assistance of counsel in nine ways. (Doc. no. 15, p. 14.) He now seeks to raise

4

additional allegations of ineffective assistance of trial counsel, as well as new claims related to prosecutorial misconduct, trial court rulings, and ineffective assistance of appellate counsel. When the government pointed out in its omnibus opposition to the motions to amend that Petitioner failed to offer any explanation why his belated amendments should be allowed, Petitioner responded with an explanation for his "oversight." (Doc. no. 38.)

Petitioner's reasons include: (1) he "hastily" filed his § 2255 motion because of his certainty that his claims about Ms. Jennings' failure to properly address Ms. Jefferies' schizophrenia were valid; (2) he has been concerned with trying to pay property taxes on the home he hopes to return to after his release from prison; (3) he "simply did not think of them until he prayed to God and realized how strongly Mr. Tarver and Magistrate Epps apparently want this wrongful conviction affirmed"; (4) he successfully manipulated court deadlines so that he could file his motions to amend prior to his extended deadline for filing objections to the R&R; and (5) he would not even need to raise additional claims if the Court and his counsel had acted properly - that is, in accordance with his wishes – when he was tried on the underlying federal charges. (Id. at 1-5.) Moreover, Petitioner acknowledges the Eleventh Circuit has ruled against him on some of the issues raised in his new claims, but he "would like the Court to now view [the claims] in light of the fact that the Court unknowingly based" its rulings on "false assertions" from Ms. Jennings. (Id. at 5-6.)

Having considered the substance of the proposed amendments, and Petitioner's reasons for offering them only after the Magistrate Judge explained why the original nine grounds for relief should be denied, the Court **DENIES** the motions. (Doc. nos. 20, 24-28, 32, 33.) There has been undue delay in filing the motions to amend, and Petitioner

5

deliberately manipulated court deadlines for his gain, actions which the Court considers dilatory motive. When Petitioner requested and received an initial, nearly doubled, period of time to file objections, he did not inform the Court he intended to use the additional time to file eight motions to amend. Rather, he claimed that his receipt of the R&R had been delayed, and he believed he would soon receive a ruling on his state habeas petition concerning the terroristic threats conviction, which he claims was unfairly used against him in his federal case. (See doc. no. 17.)

However, Petitioner then used the additional time not only to file objections, but also to attempt to expound on his already rejected claims and raise entirely new claims. See Andrx Pharms., Inc., 421 F.3d at 1236-37. As Petitioner relied on events and testimony from his 2014 trial and attached to his motions briefing that had been submitted to the Court of Appeals in 2015, (see, e.g., doc. nos. 20, 32), he clearly knew about the basis for these belated claims even prior to the filing of his original § 2255 motion in August of 2015. Petitioner's stated reasons for the belated filings amount to little more than a concession that he did not give full attention to his claims until he realized he was about to lose his case.

Moreover, even if the Court were to consider the merits of the motions, Petitioner is not entitled to relief, and thus, the motions are also due to be denied for futility. Several of Petitioner's proposed amendments raise issues already addressed and rejected by the Eleventh Circuit Court of Appeals in the direct appeal. United States v. Hobbs, 619 F. App'x 843 (11th Cir. 2015). "Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056

(11th Cir. 1994). As the Seventh Circuit noted, "[W]e do not see how a federal prisoner – who must file his motion for relief under 2255 in the very court that convicted him – can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal." White v. United States, 371 F.3d 900, 902 (7th Cir. 2004). Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal. Nyhuis, 211 F.3d at 1343. Simply putting a new name on an old issue will not suffice.

As to Petitioner's proposed ineffective assistance of counsel claims, the Magistrate Judge thoroughly explained the standard of review under Strickland v. Washington, 466 U.S. 668 (1984), at pages 16-18 of the R&R, which has been adopted as the opinion of the Court. Therefore, the Court will apply that standard without repeating it herein. As to the new ineffective assistance of appellate counsel claims, such claims are subject to the same two-part test enunciated in Strickland. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise a meritless argument on appeal. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); Nyhuis, 211 F.3d at 1344. Nor does the Sixth Amendment require appellate advocates to raise every non-frivolous issue. Philmore, 575 F.3d at 1264.

In amendments 1 and 8, as delineated *supra*, Petitioner argues the Court abused its discretion in considering whether to permit Petitioner to proceed as co-counsel and in refusing to allow Ms. Jennings to withdraw after "we had established a complete breakdown in communication and an irreconcilable conflict" concerning Ms. Jennings' trial preparation, including investigation of Ms. Jefferies' schizophrenia. (Doc. nos. 20, 32-3.) The Eleventh

Circuit rejected both claims. Hobbs, 619 F. App'x at 844-45. Moreover, as explained in detail throughout the R&R, the Court held multiple pre-trial inquiries into the attorney-client relationship in this case and did not find a complete breakdown and irreconcilable conflict as Petitioner contends.

In amendment 7, Petitioner contends the Court abused its discretion in denying a continuance based on the "false assertion" from Ms. Jennings that she was "totally prepared" to go to trial. (Doc. no. 32-2.) The Eleventh Circuit acknowledged this Court's findings that Ms. Jennings "had filed appropriate number of pre-trial motions and was prepared adequately to proceed to trial," and granting a continuance would delay and disrupt the proceedings. Hobbs, 619 F. App'x at 845. The appellate court concluded there had been no abuse of discretion. Id.

In amendments 4 and 6, Petitioner seeks to add two claims of ineffective assistance of trial and appellate counsel based on the unsuccessful attempt to obtain a continuance based upon ongoing state proceedings regarding Petitioner's 2007 terroristic threats conviction. (Doc. nos. 26, 28, 32-1.) Petitioner faults Ms. Jennings "for not asking for an evidentiary hearing or whatever it would have taken" to obtain the continuance and then faults appellate counsel for raising, but losing, the argument that a third continuance was warranted. In effect, Petitioner acknowledges both trial and appellate counsel raised the issue - indeed the issue was argued at the pre-trial conference, (doc. no. 115, pp. 6-10), and the Eleventh Circuit rejected the "substantial prejudice" arguments Petitioner again raises in these proceedings – but he refuses to accept there is no merit to the position.

In fact, in these proceedings, (doc. no. 15, p. 3; doc. no. 19, p. 1; doc. no. 31, p. 3), the Court has again explained to Petitioner why his arguments about ongoing challenges to his 2007 conviction, which appear to continue even in 2016, (doc. no. 32, p. 1), formed no basis for delaying his 2014 trial. Petitioner cannot satisfy the deficient performance or prejudice prongs of the Strickland standard for either proposed claim. His mere disagreement with court rulings, without any legal support and based solely on his interpretation of the record, does not suffice.

In amendment 9, Petitioner attempts to put a new face on the ineffective assistance of trial counsel claims he raised against Ms. Jennings in his original § 2255 motion concerning Ms. Jennings' strategic choices on how to address the testimony of Ms. Jefferies and whether to present evidence about Ms. Jefferies' mental health. The original arguments were rejected in the R&R, which has been made the opinion of this Court. (Doc. no. 15, pp. 18-25.) Petitioner now claims Ms. Jennings provided ineffective assistance of counsel because she did not follow Petitioner's preferred trial strategy. (Doc. no. 33.) Petitioner claims Ms. Jennings forced him into an unwise strategy that did not allow for the proper challenges to Ms. Jefferies' credibility. (Id.) For the reasons explained in the R&R concerning the strategic choices made by Ms. Jennings in determining how to challenge Ms. Jefferies' credibility, Petitioner cannot satisfy the deficient performance or prejudice prongs of the Strickland standard for this proposed new claim.

In amendments 2, 3, and 5, Petitioner raises new arguments that Parole Officer Jerry Davignon gave false testimony about the dates he supervised Petitioner. According to Petitioner, presenting this false testimony amounted to prosecutorial misconduct, and he

9

received ineffective assistance of counsel related to this issue because: (1) Ms. Jennings failed to object at trial, and (2) his appellate counsel failed to raise the issue of prosecutorial misconduct on appeal. (Doc. nos. 24, 25, 27.) According to Petitioner, Mr. Davignon provided incorrect information about when he supervised Petitioner, and Petitioner "feel[s] sure" the incorrect information "caused the jury to mistakenly believe [Petitioner is] obviously some type of career criminal and therefore much more likely to be guilty." (Doc. no. 24, p. 1.) Moreover, Mr. Davignon's statement was allegedly "calculated to provide maximum prejudicial impact on the jury about [Petitioner's] supposed criminal background." (Id.) Petitioner concludes that because the government did not alert the defense that Mr. Davignon "would make such a prejudicial and false statement," prosecutorial misconduct occurred, and his counsel should have pointed out the error at trial or on appeal.

Mr. Davignon testified he had been a parole officer for nineteen years and had supervised Petitioner "at some point" in his career. (Doc. no. 119 (Trial Tr.), pp. 90-91.) Mr. Davignon also authenticated Exhibit 34, a Parole Certificate stating the conditions on which the Parole Board agreed to release Petitioner from the custody of the Georgia Department of Corrections, one of which was a prohibition on receiving, possession, transporting, or having under his control a weapon. (Id. at 92-96.) Specific to Petitioner's allegations of false statements, the following exchange occurred at trial:

    Q:    Did you ever supervise the Defendant in this case, Alan Scott Hobbs, at some point?

    A:    Yes, I supervised Mr. Hobbs at the Augusta Parole Office when he was placed on contact supervision and I believe I supervised Mr. Hobbs once when I was assigned to the Thomson Parole Office.

10

(Id. at 91.) Petitioner contends this testimony was false because he had not lived in Thomson since 1986, and Mr. Davignon testified in 2014 that he had been a parole officer for nineteen years.

There is no basis for Petitioner's claims of prosecutorial misconduct based on allegedly false testimony. Mr. Davignon made no assertion about where Petitioner may have lived during his supervision. Moreover, while he stated conclusively he had supervised Petitioner at the Augusta Parole Office when Petitioner had been placed on contact supervision in 2012, he stated only he "believed" he had supervised Petitioner when Mr. Davignon had been assigned to the Thomson Parole Office. (Id.) There was no testimony about when Mr. Davignon was assigned to the Thomson Parole Office. Moreover, as Respondent argues in its opposition to the motions to amend, (doc. no. 36, pp. 15-16), testimony about Petitioner's incarceration and subsequent parole was entirely consistent with Petitioner's defense that Ms. Jefferies' lived in his house while he was incarcerated between 2007 and 2009 and had unrestricted access to the house, which could have allowed her to put the gun in the attic without Petitioner's knowledge. (Trial Tr., pp. 84-85.)

As a review of the transcript does not reveal the false testimony alleged by Petitioner, there can be no prosecutorial misconduct and no deficient performance, let alone resultant prejudice, by trial or appellate counsel for failing to object or appeal such testimony. Moreover, even if the Court were to assume merely for the sake of argument Mr. Davignon had presented false testimony, Petitioner's claim of prosecutorial misconduct would still fail because he has offered *absolutely no evidence* the prosecution knew, or even could have

known, about any correlation between when Petitioner may have lived in Thomson and to which office Mr. Davignon would testify he may have been assigned. Thus, Petitioner's case citations for the proposition that deliberate deception by the presentation of known false evidence can form grounds for vacating a conviction are inapposite. (See doc. no. 24, p. 2 (citing DeMarco v. United States, 928 F.2d 1074, 1076 (11th Cir. 1991)).)

In sum, the Court **DENIES** Petitioner's motions to amend, (doc. nos. 20, 24-28, 32, 33), **OVERRULES** all the objections to the R&R, **ADOPTS** the R&R of the Magistrate Judge as its opinion, **DENIES** the request for an evidentiary hearing, (doc. no. 4), and **DENIES** the § 2255 motion.

Further, a federal prisoner must obtain a certificate of appealability ("COA") before appealing the denial of his motion to vacate. This Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a) to the Rules Governing Section 2255 Proceedings. This Court should grant a COA only if the prisoner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in the R&R, and in consideration of the standards enunciated in Slack v. McDaniel, 529 U.S. 473, 482-84 (2000), Petitioner has failed to make the requisite showing. Accordingly, the Court **DENIES** a COA in this case.[1] Moreover, because there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.

---

[1] "If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a) to the Rules Governing Section 2255 Proceedings.

Accordingly, Petitioner is not entitled to appeal *in forma pauperis*. See 28 U.S.C. § 1915(a)(3).

Upon the foregoing, the Court **CLOSES** this civil action and **DIRECTS** the Clerk to enter final judgment in favor of Respondent.

SO ORDERED this 13th day of October, 2016, at Augusta, Georgia.

/s/ J. Randal Hall
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA